UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA

vs.

DOUGLAS NEWTON,

        Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("Office") and DOUGLAS NEWTON (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to one count of conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371, for conduct related to the offer and sale of common stock.

2. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that

1

it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence. The Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph one (1) and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to five (5) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a maximum fine of up to $250,000, or not more than the greater of twice the gross gain or gross loss resulting from the offense set forth in paragraph one (1) above.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph three (3) of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid by the time of sentencing.

5. The defendant understands that restitution under Title 18, United States Codes, Section 3663A is mandatory and he agrees that the restitution required as a result of the offense set forth in paragraph one (1) above shall be equal to the amount of any actual victim loss attributable to the

defendant's knowing participation in this offense,[1] as determined at sentencing. The defendant agrees that offenses against property listed under Title 18, United States Code, Section 3663A, were committed by him as part of the fraud scheme set forth in paragraph one (1) above, and that those offenses gave rise to this plea agreement. The defendant further agrees, as permitted by Title 18, United States Code, Section 3663A(a)(3), that restitution payable by him shall be payable for the full amount of the actual loss arising from the relevant conduct related to this matter, not just from the offense of conviction.

6. The Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The undersigned parties agree that there is no basis for a variance, that they will not seek or argue for any variance and, although not binding on the probation office or the Court, each will affirmatively recommend that the Court sentence the defendant within the advisory sentencing guideline range in this case, as determined by the Court.[2] The parties also agree that there is no basis for an adjustment, that they will not seek or argue for any adjustment, and each will affirmatively

---

[1] As of the date of this agreement, there is no known actual loss.

[2] The express purpose of this provision is to set forth the mutual agreement that the sentence imposed in connection with this agreement should be a "guideline sentence." In the event that defense counsel elects to address the Court on the record to set forth any additional sentencing factors, including but not limited to factors set forth in 18 U.S.C. § 3553, defense counsel shall, in the same timing and manner, make an affirmative request for a "guideline sentence" on the record. Initialed by: Defendant ___, Defense Counsel ___ and Government Counsel ___

recommend that the Court neither adjust upward nor downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case, except as otherwise expressly contemplated in this agreement. The undersigned parties further agree that there is no basis for a departure, that they will not seek or argue for any departure and, although not binding on the probation office or the Court, they will jointly recommend that the Court neither depart upward nor downward under the Sentencing Guidelines after determining the advisory sentencing guideline range in this case, except as otherwise expressly contemplated in this agreement.

8. This Office agrees that, although not binding on the probation office or the Court, that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be sixteen (16) or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion and these recommendations if the defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the government prior to entering into this plea agreement; or, (c) commits any misconduct after entering into this plea agreement, including but not

limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the defendant shall plead:

    a. <u>Applicable Guideline Offense and Base Offense Level</u>: Pursuant to Section 2B1.1 of the Sentencing Guidelines, the offense guideline applicable to the defendant's offense is Section 2B1.1(a)(1), which provides for a **base offense level of six (6)** because the defendant will plead guilty to conspiracy to commit securities fraud, which carries a maximum term of imprisonment of five (5) years.

    b. <u>Specific Offense Characteristics</u>: The parties agree and stipulate that the following offense characteristic applies under Section 2B1.1(b):

    (i) <u>Intended Loss</u> - The parties agree that the amount of the pecuniary harm that was intended to result from the offense was greater than $30,000, but less than $70,000, **increasing the offense level by six (6)** under Section 2B1.1(b)(1)(D); and

    (ii) <u>Sophisticated Means</u> - The parties agree that the offense involved sophisticated means, **increasing the offense level by two (2)** under Section 2B1.1(b)(9)(C).

    c. <u>Abuse of Position of Trust or Use of Special Skill</u>: The parties agree that the defendant abused a position of private trust in a manner that significantly

facilitated the commission or concealment of the offense, **increasing the offense level by two (2)** under Section 3B1.3.

10. This agreement excludes Title 26 offenses, crimes of violence, and any other proceeding which may be pending at the time this agreement is signed. This agreement is also limited to the United States Attorney's Office for the Southern District of Florida and, as such, does not and cannot bind other federal, state, regulatory, or local prosecuting authorities.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph two (2) above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by both the defendant and this Office.

12. In the event the defendant withdraws from this agreement prior to or after pleading guilty to the charges identified in paragraph one (1) above, or should this Office, in its sole discretion, determine that the defendant has failed to fully comply with any of the terms of this plea agreement or, if applicable, the letter referenced in paragraph twenty (20) below, this Office will be released from its obligations under this agreement, and the defendant agrees and understands that:

6

(a) the defendant thereby waives any protection afforded by any proffer letter agreement between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence; (b) that any statements made by the defendant as part of plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against him without any limitation in any civil or criminal proceeding brought by the government; (c) the defendant's waiver of any defense based on the statute of limitations, including the waiver set forth in paragraph thirteen (13) below, or any other defense based on the passage of time in filing an indictment or information, referred to herein, shall remain in full force and effect; (d) the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the defendant or the defendant's representatives to any state or federal agency and/or this Office; and (e) the defendant has adopted the entire factual basis set forth below in paragraph seventeen (17) as the defendant's own statement, and the defendant has stipulated to the admissibility of that statement in any case brought by the United States.

13. The defendant hereby knowingly and voluntarily waives any defense based on the statute of limitations or any other defense based on the passage of time in filing an indictment or information against the defendant with respect to any criminal offenses in connection with the defendant's criminal conduct described in paragraph one (1) above.

14. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by this Office in this plea agreement, the defendant hereby waives all

rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, or to collaterally attack the conviction pursuant to Title 28, United States Code, Sections 2255, 2254, 2241 or any other applicable provision, unless the sentence exceeds the maximum permitted by statute or is the result of an upward variance or departure from the guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if this Office appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate/collateral attack rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal/collateral attack waiver set forth in this agreement with his attorney. The defendant further agrees, together with this Office, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal or to collaterally attack the conviction or sentence to be imposed in this case was knowing and voluntary.

15. This Office agrees that it will not seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement, except that this Office shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level would be based on conduct occurring after the defendant enters into this agreement. The defendant agrees that he will be sentenced under the Sentencing Guidelines and will not seek additional downward specific offense characteristics,

reductions, variances, or downward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement. However, in the event the probation office recommends any specific offense characteristics, enhancements, reductions, or departures to or from the defendant's offense level other than those, if any, specifically referred to in this agreement, either party shall have the right but not the obligation to oppose any such recommendation.

16. The defendant understands and agrees that he will not commit any further crimes. The defendant further understands that he may be prosecuted for, without limitation, any materially false statement made to the United States at any time, including under the federal perjury, obstruction of justice, and false statements statutes.

17. This Office and the defendant agree that the following facts are true and correct, and both parties stipulate, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, that such facts provide a sufficient factual basis for the plea of guilty in this case:

> Between around March 2009 and around July 2009, the defendant Douglas Newton conspired with others to use means and instrumentalities of interstate commerce to engage in a fraudulent scheme and artifice in connection with the purchase and sale of restricted common stock. The execution of this conspiracy involved acts, practices and courses of action that operated, or would have operated, as a fraud and deceit upon investors in a pension fund.
>
> Real American Brands, Inc. was a publicly traded company[3] with common stock traded in the "pink sheets" under symbol "RLAB."
>
> The defendant and others knowingly and willfully agreed to pay illegal, undisclosed kickback payments to a pension fund employee and others, to induce the pension fund employee to cause

---

[3] Real American Brands, Inc. was not an issuer (A) with a class of securities registered under section 12 of the Securities Exchange Act of 1934; or (B) that is required to file reports under section 15(d) of the Securities Exchange Act of 1934.

the fund to buy restricted shares of common stock at inflated prices. According to the conspiracy, the pension fund employee would violate the fiduciary relationship with the pension fund's clients by using fund money to buy restricted shares of common stock, in exchange for a kickback equal to 30% of the total purchase price paid for the securities. To conceal the improper purpose of the kickback payment, these funds would transferred to a shell corporation purportedly controlled by the pension fund fiduciary.

In March 2009, $20,000 of government funds were wired interstate to purchase restricted RLAB common stock from the defendant or his co-conspirators. Thereafter, the defendant or his co-conspirators paid $6,000 to an undercover law enforcement official in the Southern District of Florida, as an illegal, undisclosed kickback to be paid to the pension fund employee and others in exchange for the purchase of RLAB common stock at inflated prices.

In April 2009, another $20,000 of government funds were wired interstate to purchase additional shares of RLAB common stock from the defendant or his co-conspirators. Thereafter, the defendant or his co-conspirators paid $6,000 to an undercover law enforcement official in the Southern District of Florida, as an illegal, undisclosed kickback to be paid to the pension fund employee and others in exchange for the purchase of RLAB common stock at inflated prices.

Prior to entering into each of these stock transactions, the defendant or his co-conspirators used one or more false or misleading consulting agreements to (i) execute the offense by giving the false and misleading impression that the illegal kickback payments were compensation for services rendered, and (ii) to conceal the defendant's fraudulent conduct from the scrutiny of securities regulators and other law enforcement.

On or about March 25, 2009, the defendant or his co-conspirators used Federal Express, a common interstate carrier, to send a check for $6,000 in United States currency to an address in Coral Springs, Florida, in the Southern District of Florida, as a kickback purportedly to be paid to the pension fund fiduciary and others in exchange for the purchase of RLAB common stock.

On or about April 8, 2009, the defendant or his co-conspirators used Federal Express, a common interstate carrier, to send a check for $6,000 in United States currency to an address in

Coral Springs, Florida, in the Southern District of Florida, as a kickback purportedly to be paid to the pension fund fiduciary and others in exchange for the purchase of RLAB common stock.

While the criminal conspiracy undertaken by the defendant and others was halted by law enforcement before it resulted in actual losses to victims, the defendant's offense was undertaken with the intent of defrauding pension fund investors out of at least $60,000 entrusted to a pension fund.

18. The defendant agrees that he shall cooperate fully with this Office by:

a. providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

b. appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office;

c. if requested by this Office, working in an undercover role to contact and negotiate with others suspected and believed to be involved in criminal misconduct, under the supervision of, and in compliance with, law enforcement officers and agents,

d. in providing information and testimony, he will not seek to protect any person or entity through false information or omission, and will not falsely implicate any person or entity.

19. Defendant agrees to forfeit to the United States, voluntarily and immediately, all of his right, title and interest in the following assets, as assets subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) and Title 18, United States Code, Section 982(a)(7):

a. $14,000 in United States currency paid by the government in connection with the purchase of RLAB common stock, as described in paragraph seventeen (17) of this agreement;

   b.  $14,000 in United States currency paid by the government in connection with the purchase of RLAB common stock, as described in paragraph seventeen (17) of this agreement; and

   c.  Any funds received from any coconspirator paid to the defendant in connection with the purchase of common stock related to the conspiracy described in paragraph seventeen (17) of this agreement.

Defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, or in which defendant has any financial interest.

Defendant knowingly and voluntarily waives any claim or defense he may assert under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the assets subject to forfeiture.

Defendant knowingly and voluntarily waives his right to a jury trial regarding forfeiture of the assets described herein.

Defendant knowingly and voluntarily waives any right he may assert in order to appeal the forfeiture of the assets described herein.

Defendant knowingly and voluntarily waives any applicable time limits for the initiation of an administrative forfeiture and/or a judicial forfeiture action or any further notification of any administrative or judicial forfeiture proceedings initiated against the assets described herein.

  20.  The defendant also agrees that the defendant shall assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others her knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of

assets which may be identified as being subject to forfeiture. Additionally, defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

21. In addition, should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and reasonably disclose all information and provide full and complete cooperation, which determinations are within the sole discretion of the United States, this Agreement is voidable at the option of the United States, and the following conditions shall then also apply:

    a. The defendant may be prosecuted for perjury or false statements, if any, committed while testifying pursuant to this Agreement or for obstruction of justice should he commit these offenses during the time in which he is cooperating with law enforcement pursuant to this Agreement;

    b. The United States may use against the defendant his own admissions and statements and the information, books, papers, documents and objects that he himself has furnished in the course of his cooperation with the United States.

22. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to

warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Title 18, United States Code, Section 3553(e), Section 5K1.1 of the Sentencing Guidelines, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

23. The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in this agreement, should the government exercise its discretion to file such a motion.

24. This is the entire agreement and understanding between this Office and the defendant.

There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 1/24/2011          By: _____
                              RYAN DWIGHT O'QUINN
                              ASSISTANT UNITED STATES ATTORNEY

Date: 1/24/2011          By: _____
                              DAVID M. GARVIN
                              ATTORNEY FOR DEFENDANT

Date: 1/24/11            By: _____
                              ROBERT H. BRETZ
                              ATTORNEY FOR DEFENDANT

Date: 1/24/11            By: _____
                              DOUGLAS NEWTON
                              DEFENDANT