UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-60150-Cr-Cooke(s)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DOUGLAS NEWTON, | ) |
| | ) |
| Defendant. | ) |

## RESPONSE TO MOTION TO DISMISS

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Douglas Newton's *pro se* Motion to Dismiss the charges against him. (DE 67.) In his letter to the Court, the Defendant argues that the government's securities fraud sting operation in this case violated his constitutional rights and that the Court, therefore, should dismiss the Indictment. He is mistaken. As a factual matter, Douglas Newton lied to the Court when claims that he was an "innocent person who was otherwise minding his own business," and that Newton had no legitimate on-going criminal activities that warranted the investigation into his conduct (DE 67 at 1 and 3.) To the contrary, the Defendant continuously defrauded investors and deserved to become the target of the undercover operation. As a legal matter, courts repeatedly rejected arguments that so-called reverse-sting operations violate defendants' constitutional rights. For these reasons, the Court should deny the Defendant's Motion, and - because he misled the Court - revoke the Defendant's bond. In addition, the Court should permit the government (both because Rule 404(b) is satisfied and because the evidence is inextricably intertwined) to introduce the

evidence discussed below in its case-in-chief.

In his letter, Douglas Newton fails to tell the Court about his history of engaging in securities fraud with his company, Real American Brands, Inc., previously known as Billy Martin's USA, Inc. ("RLAB"). That history began as early as 2004, when the Defendant came to the attention of law enforcement after an individual who was previously convicted of securities fraud reported Newton's misconduct. According to the individual, Newton sold unregistered securities to unaccredited investors, and kept the proceeds of the improper transactions. In addition, the individual stated that Newton issued a false press release touting the future involvement of Newton's company in the furniture business, when - as Newton knew - his company had no intentions to do what was explained to investors in the press release.

The pattern continued. According to the cooperating defendant who led investigators to Newton, the Defendant proposed engaging in questionable securities transactions before the crimes at issue in this case. Specifically - and as corroborated by an email - the cooperating defendant stated that Newton proposed engaging in transactions that could have violated securities regulations. These complicated three-step transactions involved issuing new company stock without public scrutiny.[1] Newton's proposal could have potentially circumvented the intent of regulations regarding the number of free-trading shares that a company can issue. *See, generally, Zacharias v. SEC*, Case

---

[1] The three steps are as follows: First, a shareholder with free trading stock sells his stock to a new, cash investor. Second, the money from the sale goes to the company and the company issues restricted stock to the shareholder who had the free trading stock originally. Third, the old shareholder keeps his stock position, the new investor receives free trading stock, and the company receives money. Thus, although described as three steps, when collapsed, the scheme involves two steps, in which a company circumvents regulations regarding the issuance of free-trading shares.

2

Nos. 08-1134, 08-1136, 08-1141 (D.C. Cir., June 23, 2009) (available online at http://www.sec.gov/litigation/opinions/2008/33-8888_appeal.pdf).

Newton did not stop there. In his promotional literature and conversations, which the government intends to introduce at trial, Newton claimed that famous individuals - including Carrie Underwood and Joan Rivers - were associated with Newton's company and that these relationships would be the subject of future press releases, yet no media reports ever link RLAB with any of the celebrities that Newton discussed. Indeed, Newton continuously lied about his company and its relationships with others to induce investors to buy stock.

A few final facts also show that Newton misled the Court. First, as the Court is aware, Newton, signed a plea agreement in which he admitted that he was guilty of conspiring to commit securities fraud. This fact directly contradicts his new claim of being an "innocent person who was otherwise minding his own business." (DE 67 at 1.)

Second, after the government ceased purchasing RLAB restricted shares and attempted to end its relationship with Newton, the *Defendant* proposed future transactions, and even proposed that his conspirator, Yan Skwara, engage in fraud in connection with a second company. These facts clearly contradict the Defendant's claim that *Newton* ended the relationship. (Skwara signed a plea agreement with the government and is prepared to testify against Newton.) Although Newton claims that he "declined to participate in Phase 2,"(DE 67 at 4,) it was *Newton* who was eager to continue to defraud investors through a second company.

Third, during conversations that Newton had with the cooperating defendant and undercover

agent, Newton claimed that he was not "lily white," when discussing criminals who were caught engaging in crimes. That is, Newton personally expressed his eagerness to proceed with the fraud. Indeed, in later conversations, Newton come up with the idea that he would use code words to hide the fraud (which he later used), showing his propensity to commit fraud.

For these reasons, it is clear that Newton misled the Court when he portrayed himself as an innocent, or "lily white," individual who was targeted by law enforcement. The Motion, therefore, fails and the Court should revoke Newton's bond.

Assuming, *arguendo*, that Newton did not have a history of securities fraud, the Court should not dismiss the Indictment because, as a legal matter, there was nothing improper with the government's conduct in this case. As numerous courts have held, reverse sting operations like this one do not violate a defendant's constitutional rights where (as here) a defendant is not entrapped by police conduct. *See United States v. Sanchez,* 138 F.3d 1410, 1413 (11th Cir. 1998). *See also United States v. Knight*, 917 F.2d 1, 2 (5th Cir. 1990) ("The reverse sting, being a completely acceptable federal device as long as the predisposition to commit crime is present, and the involvement of the federal officials in this particular sting operation make it clear beyond any doubt that this was not an outrageous police operation in violation of due process of law."); *United States v. Osborne*, 935 F.2d 32, 37 (4th Cir. 1991) (describing "the abundant and lenient appellate precedent concerning the constitutionally permissible government conduct in undercover operations"); *United States v. Sarraj*, 665 F.3d 916 (7th Cir. 2012). Indeed, in *United States v. Gifford*, the First Circuit Court of Appeals rejected a defendant's claim (similar to Newton's) that such sting operations are unconstitutional because there was no rational basis for the undercover

operation and the government supplied the contraband. 17 F.3d 462, 471 (stating the "Executive Branch is free, within broad limits, to set such snares for unwary criminals").[2]

For these reasons, the Court should deny the Defendant's *pro se* Motion to Dismiss the Indictment and should permit the government to introduce the Defendant's prior acts of securities fraud at trial. Finally, because the Defendant lied to the Court, it should revoke the Defendant's bond.

>Respectfully submitted,
>WIFREDO A. FERRER
>UNITED STATES ATTORNEY
>
>By:   /s/ H. Ron Davidson
>H. Ron Davidson
>Assistant United States Attorney
>Court ID No. A5501144
>99 Northeast 4th Street
>Miami, Florida 33132-2111
>Tel: (305) 961-9405
>Fax: (305) 530-7976

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 26, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

>s/ H. Ron Davidson
>Assistant United States Attorney

---

[2]Newton's claim that the Court should dismiss the Indictment for alleged violations of internal Department of Justice procedures fails both factually (because those procedures were followed) and legally (because they do not create a right). *See, e.g., United States v. Henry*, 482 F.3d 27, 33 (1st Cir. 2007); *United States v. Christie*, 624 F.3d 558 (3d Cir. 2010) ("The CI Guidelines do not themselves create rights for criminal defendants."); *Krasilych v. Holder*, 583 F.3d 962, 966 (7th Cir. 2009) ("The Attorney General's guidelines are internal rules that have no legal force."); *United States v. Wilson*, 314 F. App'x 911 (8th Cir. 2009).