UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  11-60150-Cr-Cooke(s)(s)

UNITED STATES OF AMERICA            )
                                    )
                                    )
                                    )
v.                                  )
                                    )
                                    )
DOUGLAS NEWTON,                     )
                                    )
        Defendant.                  )
_____)

### GOVERNMENT'S MOTION *IN LIMINE* TO PERMIT INTRODUCTION OF EVIDENCE

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Motion *in Limine,* seeking the introduction of evidence of the Defendant's scheme and artifice to defraud, and summarizing the numerous issues that the Court is scheduled to consider on April 23, 2012.  There are a lot of outstanding Motions for the Court to address, and the undersigned hopes that this Motion will clarify the remaining issues and demonstrate that they all relate to the Defendant's fundamental mis-reading of either the law or the second superseding indictment.

By way of brief background, the Defendant is charged by a second superseding indictment, alleging mail fraud, securities fraud, and conspiracy to commit securities fraud.  The allegations deal with two distinct schemes and artifices to defraud.  In the first scheme, the Defendant acted alone to "devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises" related to the purchase and sale of RLAB common stock (Counts 1 and 2) and "use[d] manipulative and deceptive devices ... with the purchase and sale of securities" of RLAB (Counts 3 and 4).  The remaining Counts allege a

conspiracy to make untrue statements in connection with the sale and purchase of the stock of a second company, USFM, (Count 5) and substantive securities fraud charges related to USFM (Counts 6 and 7).

In both schemes, the Defendant intended to defraud investors in many different ways. Each method of defrauding investors (with the exception of one) is subject to different arguments as discussed below.

### I.      Violation of Fiduciary Relationship

First, the Defendant and his conspirator both paid illegal kickback payments to the purported pension fund fiduciary to induce the pension fund to buy USFM and RLAB stock. The government is seeking to introduce expert testimony that such kick-back relationships violate a fiduciary's obligations and could harm beneficiaries. (DE 98 at 5-6.) Recognizing the damaging effect of such testimony, the Defendant seeks to exclude the government's expert from testifying about breaches of fiduciary obligations. Without citing any authority to exclude the expert testimony, the Defendant surmises that this damaging testimony is "an argument," and not an "opinion." (DE 102 at 3-4.)

The Court should recognize the Defendant's effort for what it is - a Hail-Mary plea to exclude evidence because it is damaging. This is not a justification to exclude evidence, and the Court should permit the government's expert to testify about "how payments by individuals that are not disclosed to the public or investors and compensation sometimes in the form of a kick-back payment are related to the breach of the fiduciary obligation and can further investment fraud schemes" (DE 98 at 6) and that a "beneficiary can be harmed by having his or her fiduciary make investment decisions on behalf of the beneficiary based on a kickback and not is what is in the best interest of the beneficiary." Such testimony is appropriate and will aid the jury in understanding this

complex case.

## II.    Testimony Regarding the Value of Restricted Stock

Second, the Defendant intended to defraud investors by making the pension fund purchase less-valuable restricted stock at the higher, non-restricted stock value.  This method of defrauding investors is also the subject of much litigation.

On the one hand, the government intends to call an expert to testify about restricted and free-trading stock and to testify about the relative value of each.  Specifically, the government stated that the expert would testify about the trading history of RLAB and USFM and to "explain generally about the relative fair-market value of restricted and free-trading stock on certain days."  (DE 98 at 6.)  Here, the Defendant claims that the expert disclosure says too little, and he seeks to compel the government to submit its witness to a deposition-type of questioning to satisfy Defense counsel's curiosities about the relative values of each.  Because the government believes that its seven-page disclosure is specific enough and because experts are not subject to deposition, it opposes the Defendant's request (DE 102 at 2) to submit the government's witness to a bill of particulars.[1]

On the other hand, the Defendant (after providing an insufficient two-paragraph disclosure) intends to offer his own expert to testify about the relative value of restricted and free-trading stock. The government moved to exclude the Defendant's proposed expert as irrelevant to the Defendant's intent and as failing to satisfy *Daubert*. (DE 91.)  On each point, the Defendant is caught in a Catch-22.

As to the relevancy of the testimony, the expert's testimony is either relevant to the

---

[1]If the Court disagrees, the government will provide a more detailed description of the expert's anticipated testimony.

3

Defendant's intent (in which case the Defendant's plea agreement would be admissible) or irrelevant to the Defendant's intent (in which case the evidence is inadmissible).  Remarkably, the Defendant seeks to have it both ways.  One the one hand, he claims that the Defense expert testimony is "highly relevant" to show that "Mr. Newton did not believe he was taking advantage of the fund" because the Defense expert will "establish [what would] likely happen to the shares of stock if the fund had tried to buy ... free-trading stock through block share purchases in the open market."  That is, the Defense expert's testimony about what "would happen" to the share price is evidence of the Defendant's actual intent.  (DE 101 at 2-3).  On the other hand, in the same pleading, the Defendant assures the Court that the Defense expert "will not given an opinion" as to the Defendant's intent, meaning the Defendant's plea agreement is not admissible.  (DE 101 at n1.)  Simply put, the Defendant cannot have it both ways, and the Court should either exclude the testimony or permit the introduction of the Defendant's plea agreement if it allows it.

As to the satisfaction of *Daubert*, the Defendant seeks to confuse the Court because the testimony is irrelevant to the issues *in this particular case*.  Specifically, the Defendant claims that the testimony of his expert is consistent with testimony introduced *in another case*.  Assuming for a moment that the cases are similar, the scenarios are not.  In the cases that the Defendant cites, the purchaser of the stock sought to buy a large number of shares *from the market*.  (DE 101.) In stark contrast, the purchaser in this case sought to buy a large number of shares *from the company issuing new shares*.  Simply put, the Defense expert's testimony about how a buyer would react to buying shares from *the market*  (where there were no sellers) is completely irrelevant to how a buyer would react to buying shares *from the company* (where the company was selling the stock). (DE 91 at 5-6.) For this reason, so-called expert testimony about an unrelated hypothetical that is clearly

distinguishable from the issue in the case would confuse the jury and the Court should exclude it.

### III.   Other Lies of the Defendant

Third, the Defendant sought to defraud investors by making a series of material misrepresentations and omissions regarding the status of his company.  Specifically, when trying to convince the purported pension fund manager that investing in RLAB was a good idea, the Defendant touted his company's relationship with a famous designer, its control of key trademarks, and its donations to charity.  (DE 97 at 2-3.) In addition, the Defendant failed to mention that RLAB failed to make lease payments to the Trump location that the Defendant mentioned in his sales pitch. Recognizing that evidence of these lies and omissions would demonstrate the Defendant's intent to commit securities fraud, he seeks to exclude it on the most precarious of grounds.

First, the Defendant argues that the government's subpoena to RLAB is onerous.   (DE 96 at 1-2.)  The Court should reject this argument as a last-minute effort to prevent the jury from hearing damaging evidence.  The company which was served the subpoena possesses evidence that the government seeks to introduce at trial.  That company must comply to preserve the judicial process.  If it does not, the Court should hold the company and all officers in contempt.

Second, the Defendant argues the these lies and omissions are irrelevant because the second superseding indictment alleges that the Defendant merely alleged that the Defendant paid a kick-back to cause the pension fund to purchase stock at an inflated price.  Without citing any law, the Defendant suggests that the Court must exclude any allegation of impropriety not directly related to that narrow issue.  (DE 100 at 2.)

On this point, the Defendant has shut his eyes to the plain language of the second superseding indictment.  It alleges that the Defendant devised a scheme and artifice to defraud "by

means of materially false and fraudulent pretenses" (at 1), through "manipulative and deceptive

trading practices," (at 1, 7,) made "untrue statements of material facts," (at 5,6, 7) and engaged "in

acts, practices and courses of business which would operate as a fraud and deceit upon any person,"

(at 5, 11, and 12).  While the scheme and artifice did involve paying a kick-back to induce the

purchase of stock at an inflated price, the second superseding indictment alleges that the manner and

means used "was not limited to" these kick-back payments.[2]

### IV.     Existence of Fraudulent Consulting Agreement

Finally, the Defendant defrauded investors by creating a fictitious consulting agreement

between RLAB and the undercover FBI agent.  The purpose of this agreement was to hide the kick-

back checks.  Needless to say, the FBI agent did no consulting for the Defendant or his company.

On this point, the Defendant (so far) has had nothing to say.

### V.     Evidence of Other Misconduct

The Defendant also misled investors by failing to disclose his prior misconduct, which the

government provided in its notice.  (DE 74.)[3]  The Defendant moved to exclude this evidence

because the government did not subject its witnesses to deposition-like inquiry about their testimony

(De 88 at 3.)  The Court need not address these issues, except, if the Defendant calls the cooperating

---

[2]To the extent that the Court finds that this proof constitutes a "variance" from the charged offense, (DE 100 at 2), the evidence is inextricably intertwined, satisfies the elements of Rule 404(b) and is necessary to prevent .  For these additional reasons, the Court should permit the introduction of the evidence.

[3]Consistent with Rule 404(b), and in an abundance of caution, the government is providing Notice that conspirator Yan Skwara will testify that Douglas Newton showed Skwara stock certificates that Newton held in the name of Skwara's company *before* either Skwara or his company were entitled to those certificates.  Skwara will testify that Newton admitted to issuing certificates in advance to speed up the date that restrictions could be lifted from those stocks.

defendant, the government seeks to question that witness about his extensive relationship with the

Defendant and all prior securities-related transactions.

.

                                        Respectfully submitted,
                                        WIFREDO A. FERRER
                                        UNITED STATES ATTORNEY
                              By:    /s/ H. Ron Davidson
                                        H. Ron Davidson
                                        Assistant United States Attorney
                                        Court ID No. A5501144
                                        99 Northeast 4th Street
                                        Miami, Florida 33132-2111
                                        Tel: (305) 961-9405
                                        Fax: (305) 530-7976


**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on April 20, 2012, I electronically filed the foregoing with the

Clerk of the Court using CM/ECF.

                              s/ H. Ron Davidson
                              Assistant United States Attorney