UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-60150-CR-COOKE(s)(s)

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DOUGLAS NEWTON,

        Defendant.
_____/

**DEFENDANT'S MOTION FOR NEW TRIAL PURSUANT TO
RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

        The defendant Douglas Newton, through undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Criminal Procedure respectfully moves for a new trial and in support says:

        Mr. Newton was convicted after jury trial on charges that he intended to defraud a pension fund in that he paid a kickback to the fiduciary of the fund in order to induce the fund to purchase stock in RLAB at an artificially inflated price. The court instructed the jury that in order to find Mr. Newton guilty they had to find that he intended to deceive or cheat the pensioners either for personal gain or to cause financial loss. The court instructed the jury that, "To act with intent to defraud means to act knowingly and with specific intent to deceive or cheat someone, usually for personal gain or to cause financial loss to someone else." The heart of the government's allegations and the basis of our defense concerned Mr. Newton's intentions, specifically whether he was acting with the intent to hurt the fund and or to bring personal gain to himself.

        The evidence presented by the government's last witness Michael Sputo consisted of

improper hearsay testimony which was then used by the government in its closing argument to paint a picture of Mr. Newton as a greedy, selfish man who used the funds money for personal gain. We believe the introduction of this evidence was erroneous and that the government's use of the improperly admitted evidence denied Mr. Newton a fair trial.

The jury concluded that Mr. Newton had committed fraud and we believe this decision was due in large part to the testimony of the government's last witness-Special Agent Michael Sputo. He testified that the night before his testimony he had done some investigation which resulted in evidence concerning how Mr. Newton spent some of the money paid to him by the fund. Specifically, the agent testified that on the Sunday evening before he took the witness stand that he made a phone call to a club that had received checks from Mr. Newton and was told that it was a private golf club. He also checked some records and determined that the payees on some of the checks issued by Mr. Newton were the condominium homeowners association for Mr. Newton's home in addition to other companies such as the provider of cable television service. Finally, he testified that he reviewed other records and determined that another payee was a company that received rental payments for Mr. Newton's son's apartment.

The defendant objected to the introduction of this evidence on the grounds of hearsay. The court overruled the objection and allowed the witness to testify. During closing argument the government repeatedly stated that Mr. Newton had used the money received from the pension fund to make inappropriate payments for personal expenses. The defendant believes that the combination of the inadmissible hearsay and the government's prominent use of this evidence during closing argument denied Mr. Newton a fair trial. He asks the court to vacate the jury verdict and grant him a new trial.

The defense was surprised by this evidence and this argument. The indictment made no allegation that Mr. Newton improperly used any of the money received from the fund. The government only provided a copy of Mr. Newton's company's bank statements for the year 2009. Three of the payees in some of the checks included in these statements were the club, the condominium association and the company that collected the rent due on his son's apartment. The government did not produce any documentation verifying the results of the agent's last-minute investigation. Neither did the government inform the defendant that it intended to offer such proof at trial. Due to the surprise, the defendant asked the court to declare a mistrial or in the alternative to continue the trial so that he could investigate these allegations and present evidence to the jury that the money used to pay for each of the items were legitimate business expenses. Had we had a continuance we would have also been able to prove that the money used to pay for each of the items cited by agent Sputo came from Mr. Newton's personal funds and from his mother's inheritance-a total of $65,000 of personal funds deposited into the company's bank account and used for legitimate business reasons . Importantly, we would have also been able to show that these legitimate business expenses could have been fully deducted from RLAB taxes but were not. The court denied both requests and the case continued to verdict.

Pursuant to Rule 33 a district court may grant a new trial when a defendant was unable to receive a fair trial and suffered compelling prejudice. *United States v. Pedrick*, 181F3d 1264 (11th Cir. 1999) A court's decision to grant a new trial will be reviewed for abuse of discretion. In this case Mr. Newton's right to a fair trial was prejudiced by the admission of hearsay evidence inserted into this trial without prior notice and without giving the defense opportunity to investigate the allegations and to present its own evidence. The testimony by agent Sputo consisted of information

3

that he received from either speaking to a third-party or reviewing documents. Also, such statements were offered for the truth of the matter asserted. For example, agent Sputo testified that he placed a call to a club in California and was told by the person on the other end of the phone that this was a private golf club. Such information was an out-of-court statement by the person on the other end of the phone offered for the truth of the matter asserted. The same hearsay problem infected the other two sources of information concerning the defendant's homeowners association and his son's apartment. No rule of evidence creates an exception to the hearsay rule which would allow the admission of such testimony.

The hearsay problem was exacerbated by the government's prominent and frequent use of this evidence. The prosecutor more than once urged the jury to find that Mr. Newton had misused the money sent to RLAB by the pension fund. Apart from the fact that such allegation was not in the indictment and that no discovery documents were provided to verify the agent's testimony, the government repeatedly told the jury that Mr. Newton used the funds to play golf and pay other personal expenses. Such allegations based on hearsay evidence which the defendant did not have a reasonable opportunity to investigate, unfairly prejudiced Mr. Newton in the eyes of the jury. It was Mr. Newton's defense that he did not intend to defraud the fund but instead was working hard to make money for RLAB shareholders. The defendant did not have an opportunity to make it clear to this jury that Mr. Newton's expenses were business expenses related to RLAB. For these reasons, the defendant asks the court to vacate the jury verdict and grant him a new trial.

At a new trial the defendant will be prepared to present the following evidence:
1) By 2009 RLAB's corporate offices had been moved to the defendant's home at 37 Lafayette Dr., Rancho Mirage, California in order to economize on office expenses. RLAB agreed to pay the

4

homeowner association fees and certain utilities at this address given that it was being used as the office for the company. Additionally, we would present testimony that Mr. Newton changed the configuration of his home at 37 Lafayette Dr. in Rancho Mirage, CA so that it could be utilized as the company's corporate offices and that over the years from 2008 to 2009 and beyond his home was used to hold numerous business meetings.

2) Mr. Newton had agreed to work for RLAB for an annual salary of $1 until the economy improved. He invested personal monies received from his mother's inheritance into the business. In the months before, during and shortly after the government's undercover operation from late December 2008 until May 2009, Mr. Newton personally received money from an inheritance, and from his brother and family which he then loaned to RLAB, and he borrowed money from his life insurance policy and loaned this to RLAB as well. This loan totaled $65,000. Thus, when Mr. Newton wrote some checks from the RLAB bank account,-for items which covered some personal as well as a few business obligations–he used some of his own money which he had loaned to the company.

The defendant would also have been able to prove that RLAB did not expense or deduct from his tax returns as a business cost the checks he wrote for his son's apartment, or for the club, or for his cable TV, or homeowners association fee.

3) RLAB also agreed to pay for part of the cost of a one-bedroom apartment used by the defendant's son Chance Newton in consideration of Chance's agreement to continue to do RLAB's computer website and design work, to store product samples as well as inventory and business records, and to make deliveries of clothing samples and other materials as requested by RLAB.

4) RLAB agreed to pay the cost of maintaining the company's corporate business membership at the

5

club in Rancho Mirage which would be used by any all company personnel, clients, customers and business prospects. We would also present testimony s that Mr. Newton and others with an interest in RLAB made use of the corporate membership at the club by having lunches, business meetings and charitable functions in connection with and to promote the future of RLAB, Billy Martin's and Apocalypse Clothing Company.

This evidence will contradict the government's hearsay testimony and allegations made during closing argument that the defendant used the monies received from the pension fund for improper personal reasons. This evidence will allow the defendant to counter the unfair and untrue impression left by the government that Mr. Newton was a greedy self-serving man who did not care for the welfare of his company or shareholders and improperly used the fund's money for personal expenses. For these reasons Mr. Newton asks the court to grant him a new trial.

Respectfully submitted,

MICHAEL CARUSO
INTERIM FEDERAL PUBLIC DEFENDER

By:     /s/ Miguel Caridad
         Miguel Caridad
         Assistant Federal Public Defender
         Florida Bar No.  0161380
         150 W. Flagler Street, Suite 1700
         Miami, Florida 33130-1556
         (305) 530-7000/(305) 536-4559: Fax
         Email: miguel_caridad@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 25, 2012, undersigned counsel electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: /s/ Miguel Caridad
Miguel Caridad

## SERVICE LIST

United States of America v. DOUGLAS NEWTON
CASE NO. 11-60150-CR-COOKE/TURNOFF(s)(s)

United States Court, Southern District of Florida

**Miguel Caridad, AFPD**
150 West Flagler Street Suite 1700
Miami, Florida 33l30
Tel. (305) 530-7000
Fax. (305) 536-4559
miguel_cariad@fd.org

**H. Ron Davidson, AUSA**
99 NE 4 Street
Miami, FL 33132
305-961-9405
Fax: 305-536-4699
Email: h.ron.davidson@usdoj.gov