UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-60150-Cr-Cooke(s)(s)

UNITED STATES OF AMERICA )
)
)
)
v. )
)
)
DOUGLAS NEWTON, )
)
    Defendant. )
                                                 )

**GOVERNMENT'S REPLY TO DEFENDANT'S MOTION FOR NEW TRIAL**

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Douglas Newton's Motion to for New Trial. (DE 150.) In his Motion, the Defendant claims that he suffered a violation of his rights because the jury evaluated inadmissible hearsay during the testimony of Special Agent Michael Sputo regarding how the Defendant spent money in the bank account that he controlled. The Defendant's Motion lacks merit because there was no error, and any purported errors did not affect the Defendant's substantial rights. *See, generally, United States v. Hernandez*, 433 F.3d 1328 (11th Cir. 2005) (court must determine whether error affected substantial rights or was harmless). Simply put, Rule 701 permits the lay opinion testimony that the Court admitted, the testimony was not hearsay, the Defendant elicited the testimony, there was no surprise, and any purported error was not prejudicial, so no new trial is needed.

**BACKGROUND**

By way of background, the jury heard extensive evidence, including audio and video

recordings, that Defendant Douglas Newton committed securities fraud and mail fraud in connection with his company, Real American Brands; and that he conspired with Yan Skwara to do the same with US Farms, Inc. The schemes involved bribing a pension fund fiduciary to invest in RLAB and USFM, and concealing the kick-back payments through bogus consulting agreements.

As part of its case, the government relied on the investigative work of the FBI, specifically Special Agent Michael Sputo. The Special Agent testified, among other things, that he reviewed bank records of RLAB and, after further investigation and review of databases, concluded that RLAB funds were used to pay Douglas Newton's country club, home owner fees, rent for the Defendant's son, and other personal expenses.

The jury convicted the Defendant, and the Defendant filed a Motion for New Trial, in which he conflates a variety of issues. Specifically, without citations to any transcripts, which the government ordered for the benefit of the Court; the Defendant makes three arguments in support of his Motion. First, the Defendant claims that the Court permitted inadmissible testimony during the direct examination of Special Agent Sputo. Second, he claims that Special Agent Sputo's testimony about out-of-court statements on cross-examination was inadmissible. Third, he claims that the testimony unduly surprised the defense. None of these claims has any merit.

## ARGUMENT

**I.    The Court Properly Admitted the Testimony of Special Agent Michael Sputo Regarding    His Lay Opinions.**

First, the Defendant is wrong when he claims that Special Agent Sputo could not testify about his investigation during the government's direct examination. Rule 701 specifically allows case agents to testify as to an opinion, if that opinion is "(a) rationally based on the perception of

2

the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See, generally, United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011). Indeed, the Eleventh Circuit permits case agents to offer lay opinion testimony after agents review records. In *United States v. Perez-Lopez*, for example, the Eleventh Circuit specifically allowed a police officer to testify about his opinion, under Rule 701, based on the officer's "past experiences" and the officer's "first-hand knowledge or observation." 262 F. App'x 974, 978-79 (11th Cir. 2008) ("We have rejected the argument that simply because a police officer testifies to an opinion based in part on his past experiences, his testimony should not be admitted under Rule 701."). In *Jayyouisi*, meanwhile, the Eleventh Circuit permitted a lay witness to base his opinion testimony on "his examination of documents even when the witness was not involved in the activity about which he testified." *Jayyousi*, 657 F.3d at 1102; *See also United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006) (holding that the testimony of a financial analyst of the FBI who "simply reviewed and summarized over seven thousand financial documents," was properly admitted under Rule 701).

That is what happened here. Special Agent Sputo testified on direct examination that, in his lay opinion based on his personal experiences and review of records that the Defendant made payments to his country club, his home owners association, and the rent for the Defendant's son. This testimony was rationally based on the Special Agent's perceptions, was helpful to the jury, and did not require any specialized knowledge. For this reason, Rule 701 permits the introduction of the evidence.

By seeking a new trial, Douglas Newton is conflating the *admissibility* of evidence with the

*weight* of the evidence. This is an important distinction. *See Agro Air Associates, Inc. v. Houston Casualty Co.*, 128 F.3d 1452, 1456 (11th Cir. 1997). In *Agro Air*, the district court properly permitted a party to offer lay opinion testimony as to why the plaintiff's insurance rates and premiums increased based on the witness' conversations with the plaintiff's insurance underwriters. *Id.* at 1455. The Eleventh Circuit Court of Appeals upheld the ruling because the hearsay objection to the testimony went to the weight of the evidence, not its admissibility. *Id.* at 1456. This result, of course, makes sense. To some extent, all lay opinion testimony must be based on information that the witness learned from others. For example, Special Agent Sputo learned the English language and numbers from his parents and teachers. Similarly, he learned to distinguish checks from other pieces of paper from his experiences with other people, and he learned to determine the intended recipient of a check, like the rest of us, by relying on out-of-court statements of others. *Agro Air* relieves litigants from calling every instructor and teacher of a witness to establish a lay witness' opinion of a non-technical fact that would aid the jury, but it also allows the other litigant to argue that the jury should not place significant weight on that opinion.

As a result, the Court properly permitted the government to present Special Agent Sputo's lay opinion testimony to assist the jury. To the extent that the Defendant disagreed with the agent's opinion, the Defendant had an opportunity (which he exercised in closing) to ask the jury not to rely on those lay opinions. In the end, however, the lay opinion testimony was admissible, and the jury determined what weight to assign it.

**II.     The Court Properly Admitted Testimony During the Cross-Examination of Special Agent Sputo.**

After the Court permitted Special Agent Sputo to testify on direct examination about his

conclusions about how the Defendant spent the illegally-obtained funds, the Defendant attempted to discredit the Special Agent's conclusions on cross examination. Specifically, Defense Counsel asked pointed questions about Special Agent Sputo's investigation into the flow of funds and how the agent did not follow certain leads until the trial. In addition, when asked about how the agent formed certain opinions, the Agent testified truthfully and told the jury about out-of-court statements of others.

Curiously, the Defendant now claims that he suffered a violation of his rights, requiring a new trial, because of the truthful answers that Special Agent Sputo provided in response to Defense Counsel's questions. This line of argument lacks merit for two reasons: (1) because the out-of-court statements were not hearsay offered to prove the truth of the matters asserted, and (2) any purported hearsay was invited by the Defendant. Indeed, the answers were provided to make the Defendant's point that the investigation was shoddy.

First, the Court properly permitted Special Agent Sputo to respond to Defense Counsel's questions about how the agent formed his lay opinion. Such statements are not hearsay because out-of-court statements to agents, generally, "may be admitted as non-hearsay for the limited purpose of explaining the background of the officers' actions if the admission of such statements is not overly prejudicial." *United States v. Jacques*, 266 F. App'x 824, 827 (11th Cir. 2008); *Jimenez*, 564 F.3d at 1288 (holding that out of court statements to law enforcement officials are admissible as non-hearsay "if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement"). Courts refer to this non-hearsay purpose as the "progress of the investigation" rationale.

*See United States v. Cardenas*, 234 F. App'x 892, 896 (11th Cir. 2007).

By asking Special Agent Sputo specific question about how and when he formed his lay opinions, Defense Counsel attempted to attack the "progress of the investigation," and asked the jury not to rely on the Agent's conclusions.[1] For this reason, the Court properly permitted the agent to answer specific questions about how he formed his lay opinion.

Second, to the extent that there was any error in permitting Special Agent Sputo to answer those questions, it was invited error, and a defendant cannot have his cake and eat it too by objecting to hearsay testimony that he elicits. Indeed, as the Eleventh Circuit noted, "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Brannon*, 562 F.3d 1300, 1306 (11th Cir. 2009). It is simply not fair to allow a litigant to benefit from introducing error at trial. *See United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998); *Brannon*, 562 F.3d at 1306 ("The doctrine stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal."); *United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) ("Admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates invited error.")

## III.    The Residual Hearsay Exception Applies.

When it overruled the Defendant's objections at trial, the Court found that all the testimony was admissible, in the alternative, because of the residual hearsay exception. As the Federal Rules of Evidence make clear, hearsay "not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court

---

[1] Indeed, given the strength of the government's case, the Defendant wisely tried to make this trial about the inadequacy of the government's investigation, instead of the Defendant's conduct, which was caught on tape and played to the jury.

6

determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 701. The exception applies only when "certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *See United States v. Jayyousi*, 657 F.3d 1085, 1113 (11th Cir. 2011) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009)).

These elements are met here. First, as the Defendant concedes, the testimony involved material facts. (DE 150) ("The heart of the government's allegations and the basis of our defense concerned Mr. Newton's intentions, specifically whether ... Mr. Newton [w]as a greedy, selfish man who used ... money for personal gain."). Second, as the Defendant concedes in his Motion, the testimony was trustworthy in that Special Agent Sputo truthfully testified that checks were made payable to the Defendant's country club, his home owner dues, and the apartment of the Defendant's son. Third, the evidence was probative. A jury would have no way of knowing how the Defendant stood to profit from the fraud without seeing the direct line of money from the defrauded and purported pension fund, into the corporate bank account that the Defendant controlled, and finally to pay the personal expenses of the Defendant. Simply put, the Court correctly found that any hearsay would be admissible through Rule 807.

**IV.   There Was No Surprise**.

Finally, the Defendant argues that he suffered a violation of his rights that warrants a new trial because he was unduly surprised by the testimony linking the Defendant to the bank accounts that he controlled. Specifically, the Defendant claims that he was caught flat-footed because (1) "the

indictment made no allegation that Mr. Newton improperly used any of the money received from the fund," (2) the government did not "inform the Defendant that it intended to offer [proof of how the Defendant used the money] at trial," and (3) "[t]he government only provided a copy of Mr. Newton's company's bank statements for the year 2009." (DE 150).

The Defendant's claim suffers from factual and legal flaws. As a factual matter, it is curious that the Defendant claims that he could introduce evidence, (DE 150 at 3 (describing financial records)), but then - even after filing his Motion - offers no *actual* evidence to support his Motion. At trial, after the government presented its case, the Defendant could have tried to introduce evidence on these points in many different ways. First, the Defendant could have testified to all the facts in the Defendant's Motion. Second, the Defendant could have called his son to testify about how RLAB used the son's apartment. Third, the Defendant could have called his accountant to introduce tax records. Fourth, the Defendant could have introduced other financial records that he possessed. Fifth, the Defendant could have asked the government to stipulate to certain facts, given the purported surprise that he suffered. Alas, the Defendant did none of these, and he attached no records or affidavits to his Motion, leaving the Court to wonder how reliable such evidence would be.

Furthermore, it is worth noting that the Defendant (wisely) elected not to go the route of introducing evidence because the Court previously ruled that the government would then be permitted to introduce his signed plea agreement, in which he admitted to conspiring to commit securities fraud. He wants his cake and to eat it too.

As a legal matter, there are two reasons why the only surprise is that the Defendant is making an argument that was surprised. First, the Defendant was on notice that, in a case in which the

8

government alleges an intent to defraud, the government would offer evidence of how the Defendant profited from the fraud. Specifically, the Defendant was aware, because the government provided copies, of what was in the bank records of Billy Martin's USA Inc., a business that the Defendant controlled. By reviewing the bank account, the Defendant would have seen checks to "Morningside," which, as the Defendant knew, was his own private country club. The Defendant had months to gather evidence to explain what "Morningside" was and why RLAB checks went to that entity. In addition, the Defendant saw checks to "Springs Homeowners Assoc.," which, as the Defendant knew because he wrote the checks, was his homeowners association. Again, the Defendants had months to gather evidence to explain to the jury why RLAB sent checks to "Homeowners Assoc." Furthermore, the Defendant saw checks to the apartment complex of his son. He had months to prepare his son to testify, yet elected not to. Simply put, it was no leap of faith that, after the government introduced (without objection) the Billy Martin's bank records, the government would argue that the Defendant personally profited by making payments to "Homeowners Assoc.," AT&T, and other entities, instead of business-related expenses. There was no surprise.

Second, any purported error did not affect the Defendant's substantial rights. To prove that an error affected a defendant's "substantial rights," the defendant must prove that his rights were "prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir.2006). He cannot meet that burden.

Here, Special Agent Sputo's testimony was a small portion of the government's case against Douglas Newton, and the purported hearsay was only an incremental part. The jury heard and saw

9

the Defendant on tape offer to pay a bribe to a pension fund fiduciary. The conspirator of Douglas Newton truthfully testified, almost in tears, that Douglas Newton recruited him into the conspiracy and that he knew immediately that it was wrong to offer the kick-back. Bank records clearly show that the Defendant benefitted from the fraud because money was deposited into the bank account that the Defendant controlled. Given the overwhelming evidence of the Defendant paying a kick-back to an undercover FBI agent and a conspirator testifying against him, how the Defendant ultimately used the illegally-obtained funds was only a small part of the case.

Furthermore, even if the Court excluded Special Agent Sputo's testimony, the government was still prepared to argue that the Defendant personally benefitted from the fraud because stolen investor money flowed into the account that he controlled and were used to make certain payments. That is, without Special Agent Sputo's testimony, the government was prepared to highlight to the jury that RLAB funds were used to make payments (as the checks clearly indicate) to "Homeowners Assoc.," "AT&T," and other utilities. Even without the Agent's testimony, the government was prepared to argue based on the face of the checks that Douglas Newton personally profited from the scheme. Simply put, excluding Special Agent Sputo's testimony would not have affected the outcome of the trial, and there is no likelihood that the outcome of the case would have been any different without that testimony.

## CONCLUSION

The Court should deny the Defendant's Motion for a New Trial. After the Court reviews the trial transcripts, which the government ordered, it will see that the Court properly permitted the government to present lay opinion testimony, and the Defendant solicited non-hearsay testimony. The Court properly admitted the evidence under the residual hearsay exception, and - because there was no surprise - the Defendant's rights were not violated by the introduction of the evidence.

>
> Respectfully submitted,
> WIFREDO A. FERRER
> UNITED STATES ATTORNEY
>
> By:  /s/ H. Ron Davidson
> H. Ron Davidson
> Assistant United States Attorney
> Court ID No. A5501144
> 99 Northeast 4th Street
> Miami, Florida 33132-2111
> Tel: (305) 961-9405
> Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 6, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

> s/ H. Ron Davidson
> Assistant United States Attorney