UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-60150-Cr-Cooke(s)(s)

UNITED STATES OF AMERICA )
)
)
)
v. )
)
)
)
DOUGLAS NEWTON, )
)
Defendant. )
)

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL**

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Supplemental Response to Defendant Douglas Newton's Motion to for New Trial. (DE 150.) As the attached trial transcript shows, the Government correctly described how it narrowly tailored its questions relating to the agent's investigation, and the Defendant elicited hearsay testimony. Because the Defendant's Motion for New Trial is entirely based on a mis-reading of the trial testimony, the Court should deny the Motion.

By way of background, the questioning regarding the agent's investigation into how Defendant Douglas Newton spent the proceeds of the fraud began about half way through Special Agent Michael Sputo's testimony. Assistant United States Attorney Robert Luck asked the agent, "*As part of your investigation*, were you able to determine what Spring Homeowners is?" (Tr. at 59 (emphasis added).) Counsel for the Defendant objected on hearsay grounds, and the Court noted that the question related to "the course of his investigation," (Tr. at 60,) and was "not offered to show [the truth, but rather,] why the officer [did what he did or] didn't do [something else]." (Tr.

at 61.) The Court, however, stated that it would permit Defense Counsel to "examine [the agent] about credibility." (Tr. at 63.) *See generally Agro Air Associates, Inc. v. Houston Casualty Co.*, 128 F.3d 1452, 1456 (11th Cir. 1997) (allowing a party to offer lay opinion testimony based on the witness' conversations with others, so long as the other party has the ability to impeach the witness' credibility). Before the Government could offer an alternative ground for the testimony, the Court stated that it would allo the testimony under the residual hearsay exception. (Tr. at 63.)

After the Court ruled, the Government and the agent discussed specific investigative techniques. (Tr. at 65 ("Checking law enforcement databases, I was able to determine...."); (Tr. at 66 "I used to live in Los Angeles, [and I know that Southern California Edison is] the electric company."); (Tr. at 67 ("What is the Club at Morningside, Inc.?"); (Tr. at 71 ("And again, you mentioned before, who were you able to [determine] lives at 1444 Franklin?").[1]

On cross examination, Defense Counsel repeatedly tried to impeach the Special Agent on his investigative techniques. (*See, e.g.,* Tr. at 85 "[T]his Government began to investigate the payees of these checks [only in the first six days of May 2012,] is that what you are telling us, one day ago?"); Tr. at 79 ("By the way, did you bring any of those records [that the Special Agent relied upon to form his opinion] with you for the jury to see?"); Tr. at 80 (Did you ever have anybody go look at the apartment or see [whether] if Chance Newton was even there?"); *id.* ("Did you, yourself go to this apartment?"); *id.* ("Did you ever do any investigation as to whether any of Mr. Newton's

---

[1] After the Government tendered the witness, and outside the presence of the jury, Counsel for the Defendant raised the element of surprise, claiming that, although the government provided specific notice that the government intended to use the bank records to prove the Defendant had "control over this account," Counsel for Newton had no idea that the Government intended to prove control over *specific items* in the bank account, including the homeowner fees and rental payments. (Tr. at 74-5.) The Court correctly overruled the new objection, stating that "it is a reasonable inference, based upon these exhibits, what would have happened." (Tr. at 77.)

jeans or clothing material were stored in that apartment?"); *id.* ("Did you ever do any investigation as to whether Mr. Newton's son ever worked for Mr. Newton?"); Tr. at 81("Now, did you ever go to this club to check it out?"); Tr. at 82 ("Did you do any investigation as to whether Mr. Newton went to the club [or] conducted any business at the club?").)

On several occasions, Defense Counsel posed questions that required a hearsay response. For example, Defense Counsel specifically asked, "where did you get the information about that club?" and the witness testified truthfully, "From somebody at the club." (Tr. at 81-82.) Later, Defense Counsel asked "What investigation did you do to determine [that 37 Lafayette was a condominium]?" to which the Special Agent responded, "I spoke with someone at the Springs ... on the phone there [and] then I asked them if 37 Lafayette was one of the properties that he homeowners association covered." (Tr. at 83-4.)  Defense counsel asked, "*And they said yes*?" and the witness responded, "And they said yes." (Tr. at 83 (emphasis added).)

Simply put, the trial transcript shows exactly what the government said it would show: The Government narrowly tailored its questions to the witness' lay opinions based on his investigation,[2] and Defense Counsel posed questions that required a hearsay response. For these reasons, the Court ruled correctly that the testimony was admissible, and the Defendant cannot claim that he suffered a constitutional violation because the agent truthfully answered the questions that Defense Counsel asked. There was no violation requiring a new trial.

> Respectfully submitted,
> WIFREDO A. FERRER
> UNITED STATES ATTORNEY
>
> By:   /s/ H. Ron Davidson
> H. Ron Davidson
> Assistant United States Attorney
> Court ID No. A5501144
> 99 Northeast 4th Street
> Miami, Florida 33132-2111
> Tel: (305) 961-9405
> Fax: (305) 530-7976

---

[2]   Curiously, the Defendant argues that the Government waived the right to argue that the Special Agent offered lay opinion testimony because the Government never used the words,"lay opinion" during its examination. (DE 153 at 1.) This is bizarre, because there are no magic words when it comes to such testimony, and the expression that was used ("As part of your investigation") conveys the very same meaning, without confusing the jury by using technical legal terms.

Finally, the Defendant argues that the Government waived the ability to argue that residual hearsay exception applies because the Court addressed that argument before the Government had a chance to do so. (Tr. at 63.) This too is bizarre. Under the Defendant's reading of the rules, the Government would have had to interrupt the Court and interject arguments before the Court addressed them, or the Government would have waived those arguments. The rules governing waiver, however, do not replace rules governing courtesy and common sense.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 17, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

                                              s/ H. Ron Davidson
                                              Assistant United States Attorney