UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  11-60150-Cr-Cooke(s)(s)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DOUGLAS NEWTON, | ) |
| | ) |
| Defendant. | ) |

## RESPONSE TO DEFENDANT'S SUPPLEMENT TO MOTION FOR NEW TRIAL

With leave from this Court, the United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Douglas Newton's Supplement Motion for New Trial (DE 168.)  Months after the jury convicted him of engaging in securities fraud, the Defendant provided this Court with "new" evidence that purport to show that the government misled the jury on a material fact.  The documents that the Defendant provided to the Court do nothing of the sort.  Instead, they merely demonstrate that the Defendant fundamentally mis-understood the nature of the charges against him.  For these reasons, the untimely Supplement Motion also lacks merit, and there is no need for yet another trial to establish the guilt of Douglas Newton.

As the Court is aware, the Defendant was captured on undercover video surveillance bribing someone the Defendant thought was a fiduciary of a pension fund.  In exchange for the Defendant's bribes, the fiduciary would violate his duty of loyalty to the investors and would invest in the Defendant's company, RLAB.  To cover up the kick-back payment, the Defendant entered into

fraudulent consulting agreements, which would allow all the participants in the scheme to deny any wrong doing if confronted by law enforcement about the pay-for-play deal. After the RLAB scheme was shut down, the Defendant begged the undercover agent to engage in more fraud with a second company, USFM. Unfortunately for Mr. Newton, the entire scheme was captured on tape, and the jurors saw Mr. Newton winking when he described how much "consulting" work RLAB would receive from the undercover agents, knowing full well that the "consulting" was merely a way to hide the fraud.

Given what this Court already concluded was overwhelming evidence of guilt, the Defendant focuses on a tangential issue in the case to justify a new trial: just how much the Defendant stood to profit from the RLAB deals (just a little versus a whole lot). Specifically, he argues that the government "ambushed" him when it introduced bank records showing that some of the proceeds of the fraud went to pay for personal expenses, including his homeowner fees, and when the government argued that he orchestrated the fraud out of greed. Instead, the Defendant argues that he could prove that, by paying for his country club and utility bills instead of RLAB rent to Trump in New York, the Defendant benefitted the company (and, only *indirectly*, himself).

Because the law values the finality of judgments and verdicts, to win his Motion for new trial based on "new" evidence, the Defendant has a heavy burden. He must prove all of the following "(1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003). He can do none of the above.

First, the evidence is not new. The Defendant always possessed the evidence, and it was not "discovered after trial." They are *his* tax returns; *his* son's living arrangements; *his* investments; and *his* bank records.

Second, as the Court already ruled, it was patently clear where the government would have gone with the case, and the decision not to introduce the "new" evidence at trial was a strategic one. The Indictment specifically provided notice that the government intended to prove that the object of the Defendant's schemes was "to unjustly enrich himself by engaging in manipulative and deceptive trading practices in connection with the purchase and sale of RLAB common stock." The bank records merely show how the Defendant stood to benefit - by paying for a host of personal expenses, including his gas bill, his homeowner bills, his golf club membership, and his son's apartment.

Third, the Court properly admitted the government's evidence. Special Agent Sputo could offer lay opinion testimony after reviewing records, *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011), *United States v. Perez-Lopez*, 262 F. App'x 974, 978-79 (11th Cir. 2008); and the Court properly permitted the agent to respond to Defense Counsel's questions, *United States v. Jacques*, 266 F. App'x 824, 827 (11th Cir. 2008), as more fully argued in the government's Response to the Defendant's original Rule 35 Motion. That is, the evidence was properly admitted, and the Defendant has nothing new to say on this point.

Fourth, in his Supplement, the Defendant argues that the "ambush" prevented him from preparing a defense in which he would have introduced certain documents and, presumably, called certain individuals to testify. The arguments that the Defendant raises lack merit for a variety of reasons.

As an initial matter, the Defendant's argument is internally inconsistent. On the one hand, the Defendant argues that the governments "ambush" prevented him from proving that RLAB was located at the Defendant's residence, 37 Lafayette Drive. On the other hand, to prove that RLAB was, in fact, located at 37 Lafayette Drive, the Defendant relies on *exhibits that the government introduced at trial*. That is, according to the Defendant, in an effort to confuse the jury, the government "ambushed" the Defendant by hiding the fact that RLAB was located at 37 Lafayette Drive, while simultaneously showing the jury bank statements, a Trump lease, and a consulting agreement that all listed the RLAB address as 37 Lafayette Drive. (DE 168 at 2-3, 4.) This argument makes no sense, and the jury already saw evidence that the Defendant claims would have made a difference to the outcome of the case.

The "ambush" argument also falls apart because the Defendant ignores the obvious: The Defendant resided at 37 Lafayette Drive and proceed of the fraud went to pay his homeowner fees, utility bills, and other expenses associated with his comfortable lifestyle. That is, even if the jury found that RLAB was located at 37 Lafayette Drive, the jury would still have heard evidence that Newton resided at that address, and that - instead of paying for the Trump lease - Newton paid for his home's expenses and did not downsize to a smaller and cheaper location.

The Defendant's argument also lacks merit because it is inconsistent with the Defendant's trial strategy. In his new Motion, the Defendant argues that he could have introduced evidence that he invested "personal money" into RLAB and that he did significant work for RLAB and took no salary, which - according to Newton - would have negated the government's evidence (DE 168, Ex. 1). Douglas Newton could have presented all of this evidence at trial or could have testified in his defense but chose not to because his defense at trial was that he did, in fact, receive consulting

4

services and because the Defendant was hoodwinked by the government.

It is only now, months after trial the Defendant claims he would have been prepared - but for the "ambush" - to introduce evidence that he was a hard working CEO who lacked the intent to defraud investors. This is simply not true. By making all these arguments, the Defendant is suffering from amnesia that can be dispelled by three words: *The Plea Agreement*. As the Court will recall, it ruled that, had the Defendant introduced any evidence to negate his intent to defraud investors, the government would be permitted to introduce the Defendant's signed plea agreement in which he admitted that the "offense was undertaken with the intent of defrauding pension fund investors out of at least $60,000 entrusted to the pension fund." In essence, the Defendant is seeking a new trial in which only his evidence is admissible and ignores this Court's ruling that doing so would have permitted the government to introduce evidence to negate that defense. Simply put, the Defendant cannot ask for a new trial, claiming that the jury verdict would have been different *but for* the fact that he could not introduce certain evidence, and ignoring the evidence that this Court would have permitted the government to introduce had the Defendant introduced that evidence.[1]

Fifth and finally, even on the eve of sentencing, the Defendant offers no evidence to negate

---

[1] The Defendant makes a brief reference to materials in the possession of the SEC. As a legal matter, the government does not have a constitutional duty to search for and disclose information possessed by other federal or local agencies that are not involved in the investigation or prosecution of the case. *See United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005) (no *Brady* violation regarding documents collected by civil branch of Department of Labor, where there was "no indication" that the Department and the prosecution "engaged in a joint investigation or otherwise shared labor and resources," nor "any indication that the prosecution had any sort of control over" the Department officials who collected the documents); *United States v. Casas*, 356 F.3d 104, 115–16 (1st Cir. 2004); *United States v. Shryock*, 342 F.3d 948, 983–84 (9th Cir. 2003); *United States v. Velte*, 331 F.3d 673, 680 (9th Cir. 2003); *United States v. Zavala*, 839 F.2d 523, 528 (9th Cir. 1998); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996); *United States v. Trevino*, 556 F.2d 1265, 1270–71 (5th Cir. 1977). In this case, the SEC was not part of the prosecution team.

the conspiracy conviction with Mr. Skwara who testified unambiguously that Newton recruited Skwara into the fraud and that the USFM stock deal was harmful to the purported pension fund investors. None of the "new" evidence negates any of overwhelming evidence as to the USFM fraud. And, as to the remaining counts, the evidence was so overwhelming that the jury would still have convicted the Defendant.

For all of these reasons, the Court should deny both the Defendant's original and supplemental Motions for New Trial. Simply put, the Defendant was caught on tape offering bribes to a fiduciary, and then winked when discussing how much consulting his company would receive as part of the cover-up. The government properly introduced evidence, as it said it would in the Indictment, that the Defendant stood to profit from the fraud by paying for his home expenses; and there was no surprise on this issue. In addition, to the extent that the Defendant could have offered peripheral and tangential evidence that he lacked the intent to defraud investors because he was a hard working CEO, that evidence would not have changed the outcome of the trial because it could not negate the overwhelming evidence against the Defendant, and, as the Court previously ruled, the introduction of that evidence would have triggered the right of the government to introduce the most

damning evidence of all: the Defendant's signed confession of the crime. Finally, as to the convictions for the USFM fraud, the Defendant can offer not defense.

    Respectfully submitted,

    WIFREDO A. FERRER
    UNITED STATES ATTORNEY

By:  /s H. Ron Davidson
    Court ID A5501144
    Assistant United States Attorney
    99 Northeast Fourth Street
    Miami, Florida  33132
    Office: 305-961-9405
    H.Ron.Davidson@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on October 3, 2012.

    S/ H. Ron Davidson
    Assistant United States Attorney